UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LANCE TEBLUM, BERNADETTE TEBLUM,
JOYCE BRINDLE F/K/A JOYCE CUNLIFFE,
NANCY CIVITARESE, and RHONDA KLINE,

                    Plaintiffs,

vs.                              Case No. 2:03-cv-495-FtM-33DNF

ECKERD CORPORATION OF FLORIDA, INC.,
ECKERD CORPORATION,

                    Defendants.
_____/

## ORDER

     This matter comes before the Court on Defendant Eckerd
Corporation's Motion for Final Summary Judgment (Teblum Doc. #
656), Memorandum in Support (Teblum Doc. # 657), and proposed
Statement of Undisputed Facts (Teblum Doc. # 658).  Plaintiffs have
filed a Statement of Facts in Opposition to Eckerd Corporation's
Motion for Summary Judgment (Teblum Doc. # 678) as well as
Plaintiffs' Brief in Opposition to Eckerd Corporation's Motion for
Summary Judgment (Teblum Doc. # 679).

     In addition, in an Order dated October 7, 2005, this Court
consolidated this case, Teblum et al. v. Eckerd Corporation 2:03-
cv-495-33DNF, with the case of Rodrique et al. v. Eckerd
Corporation 2:03-cv-519-FtM-33SPC for the purpose of summary
judgment only.[1]  Therefore, also before the Court are the following

_____

     [1]It should also be noted that on February 2, 2004, this Court
consolidated the case of Edward J. Dimmerling 2-03-cv-673-FtM-29DNF
with the Teblum action.  Dimmerling remains a named Plaintiff in

motions pending in the Rodrique case: Defendant Eckerd's Motion for Final Summary Judgment (Rodrique Doc. # 189) and Memorandum in Support (Rodrique Doc. # 190).  Plaintiff, Martin Schaefer, filed a response in opposition to Eckerd's Motion for summary judgment (Rodrique Doc. # 229) as well as Plaintiff Martin Schaefer's Statement of Facts in Opposition to Defendant Eckerd Corporation's Motion for Summary Judgment (Rodrique Doc. # 230).[2]

In addition, this Court has considered motions to strike affidavits and responses thereto filed in both the Rodrique case (Rodrique Doc. # 240) and Teblum case (Teblum Doc. # 687).  Upon due consideration, the Court **GRANTS** the motions to strike.[3]

_____

the Teblum action.

[2] The Court has also considered various replies as well as other documents submitted by the parties.

[3] Defendant's motion to strike the affidavit of Martin Schaefer (Rodrique Doc. # 240) and motion to strike the affidavits of Edward Dimmerling, Joyce Brindle, Lance Teblum, Nancy Civitarese and Brandon Myers (Teblum Doc. # 687) are based on the arguments that the affidavits were filed in violation of Federal Rule of Civil Procedure 56(e) because such affidavits contain hearsay and legal analysis, without the personal knowledge of the affiants.  Rule 56(e) states in pertinent part that "affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."
Here, each affidavit is replete with conclusory, self-serving legal analysis.  The affidavits do not state that they were made with personal knowledge, and in reading each affidavit, the Court determines that the mandated "personal knowledge" for filing affidavits in summary judgment proceedings was absent.  For example, during Plaintiff Civitarese's deposition, she repeated that she did not remember much of her employment with Eckerd, and did not remember the FWW method of compensation.  (Teblum Doc. # 659-50 at 7-10).  In her twelve-page affidavit, however, she

Having carefully considered the pleadings, answers to interrogatories, depositions, and other submissions of the parties, as well as the <u>amicus</u> brief of the Florida Retail Federation (Rodrique Doc. # 214), this Court determines that Defendant Eckerd Corporation's Motions for Summary Judgment in both the Teblum case and Rodrique case should be **DENIED**.

## I.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the pleadings,

---

discusses the required elements of a valid section 778.114 FWW plan and makes detailed arguments as why Defendant's plan was illegal, including mathematical examples. For example, Civitarese's affidavit, along with the other affidavits at issue, stated, "If Eckerd had established these basic material facts and provided them to me along with its FWWA, I would have been able to determine whether Eckerd's actual weekly payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary agreement (§ 778.114(c)). However, Eckerd and I never reached an understanding concerning most of these compensation elements." (Doc. # 687-3 at 3)(internal citations omitted).

In addition, although each affidavit does contain some limited factual information which meets the requirements of Rule 56(e), such as the starting dates for each Plaintiff's employment with Defendant, it is not necessary for this Court to separate the wheat from the chaff. Each of the named Plaintiffs has been deposed. The deposition testimony for each named Plaintiff provides the same factual information as the affidavit testimony. The Court loses no essential factual information by striking the affidavits. Accordingly, the Court **GRANTS** that motions to strike affidavits filed in both the Rodrique and Teblum cases.

In addition, Plaintiffs and Defendant in both the Teblum and Rodrique case have moved for sanctions with regards to the motions to strike affidavits. Specifically, Defendant argues that Plaintiffs submitted the affidavits in bad faith. <u>See</u> Rule 56(g), Fed.R.Civ.P. Though the Court has stricken the affidavits in question, the Court finds that the affidavits in question do not rise to the level of bad faith. All requests for sanctions regarding the affidavits are **DENIED**.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."

<u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert.</u> <u>denied</u>, 456 U.S. 1010 (1982).

## II. <u>BACKGROUND</u>

Plaintiffs in the Teblum action filed their complaint in state court on July 15, 2003, Defendant removed, and Plaintiffs' complaint was filed in this Court on August 27, 2003. Plaintiffs in the Rodrique case filed their complaint in state court on August 19, 2003, Defendant removed, and Plaintiffs' complaint was filed in this Court on September 9, 2003.

Plaintiffs in the Teblum case and the Rodrique case seek redress for alleged violations of the wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. Plaintiffs in the Teblum case are current or former photo-lab supervisors or photo-lab managers for Eckerd Corporation. Plaintiffs in the Rodrique case are current or former first assistant managers for Eckerd Corporation. Both the Teblum action and the Rodrique action are 18 U.S.C. § 216(b) collective "opt-in" actions, rather than class actions. In the Rodrique case, one named Plaintiff, Martin Schaefer, represents the 2,607 Eckerd first assistant managers who have opted into the suit. In the Teblum case, five named Plaintiffs, Lance Teblum, Bernadette Teblum, Joyce Brindle, Nancy Civitarese, and Edward Dimmerling, represent the 2,089 photo-lab supervisors and photo-lab managers who have opted into the suit.[4]

## III. **ANALYSIS**

### Plaintiff's FLSA Claims

The FLSA, 29 U.S.C. §§ 206(a), 207(a), sets the minimum wage

---

[4] Two additional named Plaintiffs were previously a part of the present actions. Delice Rodrique was a named Plaintiff in the Rodrique action until March 8, 2005, when she filed a stipulation of dismissal of her claim. On March 9, 2005, this Court entered an Order dismissing Plaintiff Rodrique from the action. (Rodrique Docs. # 184-185). Thus, Schaefer stands as the only named Plaintiff in the Rodrique action.

In addition, Rhonda Kline was a named Plaintiff in the Teblum action until April 22, 2005, when this Court dismissed Rhonda Kline's claims pursuant to Rule 37(b)(2)(C), Fed.R.Civ.P., due to Kline's refusal to be deposed. (Teblum Docs. # 652, 666).

and mandates that a premium be paid for overtime work.[5]  As will be discussed later, the Department of Labor has provided alternative ways in which employers may meet the overtime requirements of the FLSA.  The Fluctuating Work Week ("FWW") method of compensation is one system that employers may utilize to meet the FLSA's overtime premium requirements.  The FWW has been codified at 29 C.F.R. § 778.114.

In both the Teblum and Rodrique actions, Plaintiffs were compensated using the FWW method of compensation.  Under the FWW, employees receive a weekly salary calculated on the basis of 40 hours of work per week plus additional half time for all hours worked in excess of 40 hours per week.  Perhaps the most distinguishing feature of FWW is that, under FWW, employees are compensated for overtime (hours over 40 per week) at a rate of one half times regular rate of pay, rather than one and one half times the regular rate of pay.  The Eleventh Circuit has explained the

---

[5] 29 U.S.C. § 207(a)(1) provides:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

FWW as follows:

> The fluctuating workweek method of payment allows an employee whose hours fluctuate from week to week to be compensated at a fixed amount per week as straight-time pay irrespective of the number-few or many-of hours worked. Payment for overtime hours under this method is at one-half time regular-rate instead of the standard one and one-half time rate because the straight-time rate already includes compensation for all hours worked.

Davis v. Friendly Express, Inc., 2003 WL 21488682, at *1 (11th Cir. 2003)(table).

As pointed out in Davis, "The mathematics of this payment structure means 'the more the employee works and the more overtime the employee logs, the less he or she is paid for each additional hour of overtime.'" Id. (citing Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1280 (4th Cir. 1996).

In this case, no Plaintiff has alleged that the FWW is illegal, and no Plaintiff challenges the legitimacy of the FWW. It is not disputed that the FWW is a lawful method of compensation.[6] Rather, the Plaintiffs assert that Defendant has misapplied the FWW, and has failed to comply with the requirements of the Eleventh Circuit and 29 C.F.R. § 778.114 in implementing Defendant's FWW plan.

---

[6] Plaintiffs in both the Rodrique and Teblum cases have reaffirmed this statement, for example as stated in Plaintiffs' brief in opposition to Defendant's motion for summary judgment in the Teblum case, Plaintiffs state: "All parties agree that the fluctuating workweek formula of prepaying employees' overtime at the regular hourly rate, leaving only the overtime to be paid at one-half the regular rate, is lawful. See. § 778.114." (Teblum Doc. # 689 at 3-4).

The FWW is described in detail in <u>Davis</u> and in 29 C.F.R. §

778.114(a).[7]

---

[7]   29 C.F.R. § 778.114 states in pertinent part:

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

(b) The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose overtime work is never in excess of 50 hours in a workweek, and whose salary of $ 250 a week is paid with the understanding that it constitutes his compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 44, 50, and 48 hours, his regular hourly rate of pay in each of these weeks is approximately $ 6.25, $ 5.68, $ 5, and $ 5.21, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $ 250; for the second week $ 261.36 ($ 250 plus 4 hours at $ 2.84, or 40 hours at

In addition, as correctly explained by Defendant, pursuant to the relevant Department of Labor regulations and case law, an employer may pay overtime in accordance with the FWW so long as: (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week; (3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employer and the employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and (5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of forty (40) during the week. 29 C.F.R. § 778.114; see also Davis, 2003 WL 21488682, at *1; O'Brien v. Town of Agawam, 350 F.3d 279, 288 (1st Cir. 2003); Griffin v. Wake County, 142 F.3d 712, 716 (4th Cir. 1998).

Although Plaintiffs have launched a multifaceted assault on Defendant's FWW plan, the focus of this suit remains on the following of Plaintiffs' allegations: Defendant's application of

---

$ 5.68 plus 4 hours at $ 8.52); for the third week $ 275 ($ 250 plus 10 hours at $ 2.50, or 40 hours at $ 5 plus 10 hours at $ 7.50); for the fourth week approximately $ 270.88 ($ 250 plus 8 hours at $ 2.61 or 40 hours at $ 5.21 plus 8 hours at $ 7.82).

the FWW abused the FLSA standards for payment of overtime and straight time, and Defendant manipulated the FWW system with accounting techniques which resulted in unlawful failure to properly compensate Plaintiffs for overtime.

The named Plaintiffs and all individuals similarly situated seek injunctive and declaratory relief, compensation and credit for all uncompensated work, liquidated and/or other damages and attorney's fees and costs.[8]  In addition, Plaintiffs assert that Eckerd's alleged violations of the FLSA were willful, invoking the FLSA's three year statute of limitations pursuant to 29 U.S.C. § 255(a) and requiring an award of liquidated damages in an amount two times the compensatory award pursuant to 29 U.S.C. § 260. (Teblum Doc. # 693-1 at 3).

Although there is a split in the circuits on the issue of whether Plaintiff or Defendant bears the burden of proof under 29 C.F.R. § 788.114, the Eleventh Circuit has held that in cases such as this one, Plaintiffs bear the burden of proof. <u>Davis</u>, 2003 WL 21488682, at n. 4 ("Generally, a FLSA Plaintiff carries the burden of proving all elements of a FLSA claim.  When, however, an employer relies on an exemption from a FLSA requirement, the employer generally bears the burden of showing that the exemption

---

[8] It should be noted that in July 2004, Eckerd sold all of its retail stores and the subsequent purchasers either immediately, or after a brief period, discarded Eckerd's fluctuating workweek method of compensation. (Rodrique Doc. # 230 at 15).

applies.  As the Fifth Circuit concluded, the fluctuating workweek method is an alternative means of complying with the overtime provisions of FLSA, it is no exemption from those provisions.").  Thus, Plaintiffs, as the challengers of the legitimacy of Defendant's FWW plan, must demonstrate that Defendant failed to comply with the terms of 29 C.F.R. § 778.114, the regulation that governs the application of the FWW method of compensation.

**A.   <u>Rodrique Case</u>**

This Court will address Eckerd's Motion for Summary Judgment in the Rodrique case first.  In Rodrique, Plaintiff Martin Schaefer is the only named Plaintiff and is the representative Plaintiff for all similarly situated Plaintiffs.  Schaefer worked for Defendant from March 26, 2001 through October 2002.  (Rodrique Doc. # 190 at 2).  At the outset it must be noted that, because Plaintiff Schaefer is the named Plaintiff in this action, the manner in which his case is decided will determine the fates of the numerous opt-in Plaintiffs in the Rodrique case.  See <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1216 (11th Cir. 2001)(plaintiffs who "opt in" to a collective action under 29 U.S.C. § 216(b) by filing consent forms are considered class members and are bound by the outcome of the litigation).[9]  In addition, in the FLSA collective

_____

[9] In both the Rodrique and Teblum cases, the consent forms signed by all opt-in Plaintiffs contained the following language:

> By my signature below, I hereby authorize the filing and prosecution of the above-styled action in my name and on

action case of <u>Prickett v. DeKalb County</u>, 349 F.3d 1294, 1297-1298 (11th Cir. 2003), <u>cert. denied</u>, 542 U.S. 919 (2004), the Eleventh Circuit construed a consent form not unlike the form signed by all opt-in Plaintiffs in these cases, and determined that the adjudication of the named plaintiff's claims decided the claims of the opt-in plaintiffs.

This Court will now proceed to analyze the claims of Plaintiff Schaefer, the sole representative Plaintiff in the Rodrique action.

## 1. **Fluctuating Hours**

The first requirement of a valid FWW plan is that it must apply to employees whose hours fluctuate from week to week. 29 C.F.R. § 778.114(a). In this case, the uncontroverted evidence contained in Plaintiff Schaefer's payroll records demonstrates that Plaintiff Schaefer's hours did fluctuate from week to week. (Rodrique Doc. # 191-4 at 16). Plaintiffs do not argue that Schaefer's hours did not fluctuate from week to week; however, Plaintiffs contend that Eckerd's plan violated the spirit of the

---

my behalf by the above representative Plaintiffs and designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I certify that to the best of my knowledge: (1) I have worked for Eckerd in the last three years; (2) During those three years, I worked in excess of forty hours; (3) During those three years, I did not receive overtime pay at time and one half.

FWW because it required its employees to work a minimum of 50 hours a week.[10]  Schaefer's "fluctuating" hours generally fluctuated only above forty hours per week.   However, Plaintiff Schaefer did utilize vacation, holiday, sick, and personal time, which sometimes caused Plaintiff Schaefer to work less than a forty-hour work week. (Rodrique Docs. # 245 at 14 n. 8; 191-4 at p. 26).

Plaintiffs contend that because Defendant required its employees to work a maximum of fifty hours a week, Defendant should not be permitted to take advantage of the FWW plan.[11]

The court in <u>Evans v. Lowe's Home Centers, Inc.</u>, No. 3:CV-03-0438, 2004 U.S. Dist. LEXIS 15716, at *13-14 (M.D. Pa. June 17, 2004), addressed arguments similar to those now raised concerning employees being required to work over 40 hours every week; however, the court concluded that no authority existed for the plaintiff's position.[12]  In this case, the Court has carefully scrutinized the

---

[10]  The fact that Defendant required its employees to work 50 hours per week as a standard work week is not contested.

[11] In <u>Condo v. Sysco Corp.</u>, 1 F.3d 599, 602 (7th Cir. 1993), <u>cert.</u> <u>denied</u>, 510 U.S. 1110 (1994), the court upheld a defendant's application of the FWW method of compensation to an employee who worked at least 40 hours per week every week.   In <u>Condo</u>, it was only the amount of overtime that varied, and the court specifically noted that there was never a week when the plaintiff employee worked less than 40 hours.   In the present case, Plaintiff Schaefer stated in his deposition that he took a week-long vacation. (Rodrique Doc. # 191-3 at p. 26).

[12] The court explained:

There is appeal to the argument that when no employee ever works less than forty hours, the fluctuating work

law of the Eleventh Circuit and the regulations of the Department of Labor and, similar to the court in <u>Condo</u>, finds no binding precedent requiring a ruling in favor of Plaintiffs on this issue.

Accordingly, because Plaintiffs and Defendant agree that Plaintiff Schaefer worked hours which fluctuated from week to week, there is no material issue of fact as to the first FWW requirement.

### 2. <u>Fixed Salary</u>

The second requirement of a valid FWW is that it must be

---

week method should not apply. This starts with the Congressional purpose expressed in 29 U.S.C. § 207 that hours worked in excess of forty requires [sic] overtime pay at one and one-half times the hourly rate. The Labor Department promulgated a regulation which sought to cover situations where employees worked fluctuating hours, that is, workweeks that fluctuated between more that forty hours and less than forty hours. In that type of situation, the Labor Department said that an employer may pay an employee a salary and overtime for any hours worked in excess of forty. The argument continues that if an employer pays a salary to employees who never works [sic] less than forty hours, then the methodology should not apply because it allows the circumvention of the time and one-half provisions in 29 U.S.C. 207. . . . [However] [n]either the language of 29 C.F.R. 778.114(a) supports this point of view, nor does the existing authority. <u>See Condo v. Sysco Corp.</u>, 1 F.3d 599, 603 (7th Cir. 1993)(noting that each requirement of 778.114 was satisfied because plaintiff worked fluctuating hours, although he never worked fewer than forty hours per week); <u>Flood v. New Hanover County</u>, 125 F.3d 249, 253 (4th Cir. 1997) (finding that employees hours fluctuated for purposes of section 778.114 even though they worked pursuant to a fixed schedule, the number of hours varied from week to week)); <u>Griffin v. Wake County</u>, 142 f.3d 712, 715 (4th Cir. 1998) (finding that work hours must fluctuate and does not require an unpredicted schedule)).

<u>Evans</u>, 2004 U.S. Dist. Lexis 15716, at *12-14.

applied to employees who receive a fixed salary regardless of the number of hours worked. 29 C.F.R. § 778.114(a).

In this case, Schaefer's deposition testimony confirms that he did receive a fixed weekly salary of $460.00 per week from his start date of April 2001 until September 8, 2002, when his salary was increased to $469.00 per week. (Rodrique Doc. # 191-3 a 16). Plaintiff's employment with Defendant ended in October 2002. (Rodrique Doc. # 191-3 at 10).  It is apparent that Defendant provided Plaintiff Schaefer with a constant weekly salary, which is one of the primary purposes of the FWW.[13]

Therefore, the second element of a valid FWW is met, and there is no issue of fact to be determined with regard to whether Plaintiff received a fixed weekly base salary.

### 3.   **The Fixed Base Salary Remains Above Minimum Wage**

The third requirement of a valid FWW is that the fixed base wage is sufficient to provide compensation at a regular rate not less than the legal minimum wage.  In this case, it is not disputed that Plaintiff Schaefer's weekly salary never dropped below minimum wage.  Plaintiff's payrolls evidence the fact that Plaintiff's pay never fell below $ 5.15 per hour, which is the minimum wage.  29 U.S.C. § 206(a)(1).

---

[13] As explained by the court in Lance v. Scotts Co., No. 04-5270, 2005 U.S. Dist. LEXIS 14949, at *2 (N.D. Ill. July 21, 2005), "In theory, the FWW method is beneficial to both the employers and the employees, because it provides a measure of financial predictability and uniformity."

### 4. <u>Mutual Understanding</u>

The applicable regulation provides that proper FWW agreements must be based upon a "clear and mutual understanding" that the employer will pay the employee a fixed salary regardless of the number of hours worked. 29 C.F.R. § 778.114. The Eleventh Circuit has further described this required level of understanding in the <u>Davis</u> case. 2003 WL 21488682, at *2.

In <u>Davis</u>, convenience store managers paid pursuant to the FWW argued that the FWW should not apply to them because they did not have a clear and mutual understanding with their employer regarding how they were paid. <u>Id.</u> The District Court held that a clear and mutual understanding existed as a matter of law because the employees' weekly pay stubs showed the manner in which employees were paid under the FWW. The Eleventh Circuit affirmed, and added that "Plaintiffs 'received a regular lesson-in the form of their paychecks-about how the fluctuating workweek plan operates.'" <u>Davis</u>, 2003 WL 21488682, at *2 (quoting <u>Griffin</u>, 142 F.3d at 716-717). The Eleventh Circuit further noted, "While Plaintiffs claim confusion existed about how actual calculations were made, that claim casts no shadow on the underlying understanding that the fixed salary constituted compensation (apart from the one-half overtime premium) for all hours worked in a workweek, whatever

their number." <u>Davis</u>, 2003 WL 21488682, at *2.[14]

As in the <u>Davis</u> case, Plaintiff Schaefer in this case was educated about the FWW by his pay stubs.  In addition, Schaefer's statements offered at his January 29, 2005 deposition support a finding that a clear and mutual understanding concerning the FWW existed between Plaintiff Schaefer and Defendant:

> Q. Now, when you were hired as an assistant manager,
> were you advised as to how you would be paid?
> A. Yes.
> Q. All right. And do you recall who had advised you how
> you would be paid?
> A. There was a lady who was the new hire specialist. I
> do not know her function, but she's the one that gave
> me the paperwork to sign.
> Q. Okay. And by paperwork to sign, what do you mean?
> A. The application and --
> Q. Oh, okay.
> A. -- and the consent forms I needed to sign.
> Q. * * * Did she tell you how you would be paid as an
> assistant manager?
> A. Yes.
> Q. And what were you told?
> A. That there would be a base salary and then a
> fluctuating salary for hours over 40.

(Rodrique Doc. # 191-3 at pp. 19-20).
                              * * *
> Q. All right. And was it your understanding when you
> began working as an assistant manager that you were to
> receive a base salary for the 40 hours, and then for all
> hours over 40 you would receive a fluctuating work week
> overtime?
> A. Yes.

---

[14] The Court in <u>English v. Pharmerica Drug Systems, Inc.</u>, 8-04-cv-471-T-26-EAJ, at *9 (M.D. Fla. August 27, 2004) followed a similar reasoning and stated, "Given the law applicable to fluctuating workweeks, however, it is irrelevant that Plaintiff objected to his being placed on a straight salary for varying hours.  Plaintiff impliedly understood the agreement by continuing to work and receive the same pay check week after week."

Q. Okay. And then the base salary that you understood you would receive were the numbers that we went over earlier on [Bates stamped] page 743 of Exhibit 1, which was $460 base salary a week and then eventually leading up to $469 a week?
A. Yes.
Q. All right. And did you understand that when you worked in excess of 40 hours that your overtime rate would be calculated by dividing the base salary by the total number of hours worked and then taking a half time of that effective hourly rate times the number of hours over 40?
* * *
Q. Okay. Did you understand you would be paid that way?
A. Yes.
Q. Okay. In other words, if you worked -- let's say your base salary was $460 and you worked 50 hours in one week, you understood that you would divide 460 by 50 and get an hourly rate, and then you would multiply that hourly rate times one half times the number of overtime hours to get your fluctuating work week overtime?
A. The question was did I understand that?
Q. Well, did you know that's how you were being paid?
A. Yes, sir. They called it Chinese overtime.

(Id. at pp. 21-22).

Schaefer's deposition testimony demonstrates that a clear and mutual understanding existed between Schaefer and Defendant.

### a.  Maximum Number of Hours

In addition to claiming that Plaintiff Schaefer did not understand the FWW method of compensation, Plaintiffs assert that there could be no clear and mutual understanding between Plaintiffs and Defendant because Defendant failed to tell the employees the maximum number of hours that such employees can be called upon to work in a work week or other period of time.  Plaintiffs have failed to cite any binding precedent for the proposition that employees must know the maximum number of hours that they will be

19

called upon to work.

Plaintiff has cited <u>Bumpus v. Continental Banking Co.</u>, 124 F.2d 549 (6th Cir. 1941) and <u>Overnight Motor Transportation Company v. Missel</u>, 316 U.S. 572, 581 (1942) in support of its argument. As stated by Defendant (Rodrique Doc. # 250-1), the case of <u>Bumpus</u>, 124 F.2d 549, is factually inapposite to this case and not binding.[15]  Further, the Supreme Court's proclamation in <u>Missel</u>, which follows, does not control this case:

> It is true that the wage paid was sufficiently large to cover both base pay and fifty per cent additional for the hours actually worked over the statutory maximum without violating section six. But there was no contractual limit upon the hours which petitioner could have required respondent to work for the agreed wage, had he seen fit to do so, and no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage. Implication cannot mend a contract so deficient in complying with the law.

316 U.S. 572, 581 (1942).

This Court notes that <u>Missel</u> was decided before the Department of Labor issued it regulations on the FWW.  While the Supreme Court may have determined that an employment contact similar to a modern-day FWW plan was deficient because it did not require a limit on the hours the employee could have been required to work for the agreed wage, the Court in <u>Missel</u> was not discussing an FWW plan as regulated by the Department of Labor's regulations, with the other

---

[15]  <u>Bumpus</u> was handed down before the Supreme Court first discussed the FWW in <u>Missel</u>.  Both cases were decided before the Department of Labor issued 29 C.F.R. § 778.114.

protections to the worker the FWW affords.

Importantly, the Court in _Missel_, in discussing a fluctuating work week plan, described a compensation plan with a weekly salary that remained fixed, even though the number of hours worked per week varied, and there was no provision for overtime pay, as the unchanging weekly salary contemplated overtime pay. Such a plan is different from the FWW plan described in the Department of Labor's regulations. It is easy to see why the Supreme Court emphasized the importance of a maximum number of hours to be worked per week, as the employees contemplated by the Court received the same amount of pay per pay period, no matter how many hours they were asked to work, and no overtime premiums were paid.

Thus, Plaintiff's argument that Defendant's plans were deficient due to a lack of mutual understanding must fail. This Court adopts the statement of the Fourth Circuit in _Griffin_, 142 F.3d at 716, which the Eleventh Circuit cited with approval in _Davis_, 2003 WL 21488682, at *2. The _Griffin_ court held that the clear and mutual understanding prong of Section 778.114 "only requires employees to understand the essential feature of the fluctuating workweek plan--that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 142 F.3d at 716 (internal citation omitted).

Further, it should be noted that it is not this Court's role to read into the Department of Labor's regulations requirements that are not present.  In fact, <u>Chevron U.S.A., Inc. v. National Resources Defense Council</u>, 467 U.S. 837, 842-843 (1984), mandates that this Court defer to the administrative regulations unless there is some showing that such regulations contradict Congress's intent in creating the underlying code provision, which the regulation is said to interpret.[16]

The record supports Defendant's position that Plaintiff and Defendant agreed that Defendant would pay Plaintiff a fixed salary regardless of the number of hours worked.  No factual dispute exists.

---

[16] Specifically, the Supreme Court in <u>Chevron</u> ruled:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842-843.

5.   <u>**50% Overtime Premium**</u>

The final element of a valid FWW is that the employee must receive a 50% overtime bonus for hours worked over forty in addition to the fixed weekly salary.

Plaintiffs assert that Defendant violated the overtime standards of the FLSA (1) by adding nonproductive time to the hours actually worked by the employee to arrive at the rate of pay (which, in turn is divided by two to yield the overtime rate) and (2) in similarly adding bonuses to the employee's hours worked to arrive at the sum that is divided by two in order to yield the overtime rate.[17]

a.   **Nonproductive Time**

Plaintiffs have asserted their arguments concerning nonproductive time in two ways.  First, Plaintiffs argue that Plaintiff Schaefer was not properly paid a fixed weekly salary for hours worked because Defendant "deducted time from the assistant managers' non-productive [time] ('NPT') 'bank' (i.e. holiday, sick, or vacation) when the employee performed no actual work." (Rodrique Doc. # 190 at 9).

---

[17] In addition, Plaintiffs' arguments concerning errors in computing overtime when various bonuses were involved do not pertain to Plaintiff Schaefer. It is undisputed that Plaintiff Schaefer did not receive any bonuses during his employment with Eckerd as a first assistant manger (the time in question for this suit).  During Schaefer's deposition, he was asked, "As an assistant manager, did you ever receive any type of a bonus?" Plaintiff Schaefer responded: "No." (Rodrique Doc. # 191-3 P. 25).

This Court finds that Defendant's use of nonproductive time as to Plaintiff's fixed weekly salary was consistent with the governing regulation: 29 C.F.R. § 778.114. Defendant's employees were paid as though they had worked on holidays, vacations, and sick days.

This Court agrees with Defendant that an employer does not run afoul of 29 C.F.R. § 778.114 simply by making deductions from an FWW employee's nonproductive time bank for hours an employee does not actually work so long as the employee receives the same weekly base salary. See <u>Aiken v. County of Hampton</u>, 172 F.3d 43 (Table), 1998 WL 957458 (4th Cir. 1998), at *4 (county did not violate FWW "by deducting time from an employee's leave bank when the employee misses work.").

Further, the Fourth Circuit's opinion in <u>Griffin</u> addressed a similar legal issue in detail:

> Wake County [the defendant] has voluntarily provided its EMTs [the plaintiffs] with the extra benefit of paid vacation and sick leave. The EMTs now claim that the County violates federal law when it requires its employees to draw down their accrued leave or vacation balances when they exercise this benefit. Unlike deductions from base pay, such deductions from leave simply do not constitute a violation of section 778.114. To countenance the EMTs' claim to the contrary would beg the question how, if at all, any system of earned vacation time is to operate if an employer may not deduct from it when the employee takes a vacation.

<u>Griffin</u>, 142 F.3d at 718.

The second argument set forth by Plaintiffs concerning nonproductive time presents a more concrete legal challenge.

24

Plaintiffs argue that the Defendant violated the FLSA not when Defendant took hours from employees NPT banks, but when Defendant calculated employees' overtime premiums by using NPT in the equation which computed overtime pay.

Specifically, Plaintiffs argue that Defendant violated the FLSA when Defendant utilized NPT to off-set hours not worked by employees, and for this proposition, Plaintiffs cite 29 C.F.R. § 778.218(a), which states:

> Payments which are made for occasional periods when the employee is not at work due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause, where the payments are in amounts approximately equivalent to the employee's normal earnings for a similar period of time, are not made as compensation for his hours of employment. **Therefore, such payments may be excluded from the regular rate of pay under section 7(e)(2) of the Act and, for the same reason, no part of such payments may be credited toward overtime compensation due under the Act.**

(Emphasis added).

The above regulation makes clear that payments made for periods of time when the employee is not working due to illness, a vacation, or a holiday are not made as compensation for hours worked, and therefore, cannot be "credited" toward overtime compensation. This Court interprets this regulation to mean that employers may not use pay for sick, holiday, and vacation time as payments for an employee's overtime work.[18]

---

[18] This Court has studied the opinion in <u>Duplessis v. Delta Gas, Inc.</u>, 640 F. Supp. 891, 896-897 (E.D. La. 1986), which evaluated the issue of whether an employer could avoid paying overtime compensation due to its employees because such employer

Next, Plaintiffs argue that Defendant illegally to "required a minimum number of workweek hours (50) and docked an employee's nonproductive time for the difference between the employee's scheduled time (which generally was the required 50 hour workweeks or more) and the 40 hour minimum workweek. (Teblum Doc. # 697 at 29). Plaintiff continues its discussion as follows: "Eckerd's nonproductive time-docking system was thus developed not to maintain the quid pro quo with respect to vacation, sick time, or

---

had paid the employees for nonproductive time. The Duplessis court's discussion of this issue provides guidance to this Court in its analysis of the nonproductive time issue at hand:

> Defendants seek a credit against plaintiffs' award of overtime compensation for the extra compensation paid for non-productive time and year end bonuses, allegedly in lieu of overtime compensation. Under section 7(h) of the FLSA, certain types of extra compensation are to be treated as overtime compensation and may be credited to the employer. These types of compensation are: 7(e)(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section . . . . 7(e)(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, holidays, or regular days of rest . . . . 7(e)(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective- bargaining agreement . . . . Where, as in this case, the payments are not themselves related to the performance of overtime, and instead are payments made for occasional periods when no work is performed and the bonus is at the sole discretion of the employer, such payments are not included in the regular rate of pay nor are such payments creditable as overtime.

(Internal citations omitted).

holiday time utilized by the employee, but instead, was used as a payment device designed to avoid paying its employees overtime at the regular time and one-half rate." (Id.)

The Court finds an example provided in the Teblum case, of an FWW employee with a base weekly salary of $400.00 to be illustrative of Plaintiffs' argument:

> For example, in a 58-hour scheduled workweek where the employee actually worked only 50 hours and used eight non-productive hours for illness . . ., Eckerd, under its own FWW, should have paid the employees gross pay as follows:
>
> $400.00 salary ÷ 50 hours = $8.00 per hour
>
> $8.00 per hour ÷ 2 = $4.00 x 10 overtime hours = $40.00 total overtime pay.
>
> $400.00 salary + $40.00 overtime pay = $440.00.
>
> Instead, Eckerd treated the employees' non-productive time (eight hours) as if it were productive time (i.e., time worked) in order to reduce the employee's regular hourly rate and overtime hourly rate as follows:
>
> $400.00 salary ÷ 50 hours + 8 hours non-productive hour =$6.89 per hour.
>
> $6.89 per hour ÷ 2 = $3.45 per overtime hour
>
> $3.45 per overtime hour x 10 overtime hours = $34.50 overtime pay
>
> $400.00 salary + $34.50 overtime pay = $434.50.
>
> In this single workweek, the employee was therefore underpaid $6.50 ($440.00-$434.50).

(Teblum Doc. # 680-5 at 1).

Contrary to Plaintiff's example above, Defendant asserts the following:

> Eckerd added the non-productive time to the *amount of hours* which initially appears to reduce the value of the

> half-time; however, Eckerd then applied the **same** half-time rate to the number of non-productive hours taken **and paid the Plaintiffs *in addition* for those non-productive hours.** The net effect, then, was to actually pay the Plaintiffs **in excess** of the overtime due, while the Plaintiffs' non-productive hours bank was debited, because it came from those "accounting buckets" for accounting purposes.

(Rodrique Doc. # 250 at 14-15) (emphasis in original).

Defendant submits that it payed overtime on productive time as well as on the nonproductive time. So, in the example above, Defendant would have paid the employee for 18 hours of overtime (10 hours overtime actually worked and 8 hours nonproductive time counted as overtime hours) rather than only 10 hours, as stated in Plaintiffs' example. Therefore, Defendant would have paid the employee $62.10 in overtime for a sum of $462.10 for the week--rather than the total of $434.50, as suggested by Plaintiffs as the amount Defendant would owe if Defendant omitted non-productive time from the equation.

Defendant cites to named Plaintiff Lance Teblum's nonproductive time to demonstrate how it utilized nonproductive time. (Teblum Doc. # 702 at 14-16). Unfortunately for Defendant, the examples utilized to explain the manner in which Defendant purported to use nonproductive time contains mathematical errors. Despite the errors, the Court concludes that Defendant argues that it paid overtime on productive time and non-productive time and, therefore, it ameliorated any negative affect adding non-productive

time into the regular rate may have had.

At this junction, the Court cannot escape the conclusion that a material issue of fact remains.  Plaintiffs allege that the Defendant added non-productive time to the regular rate of pay, and that Defendant failed to pay overtime on the non-productive time.

Defendant, on the other hand, argues that it added non-productive time to the regular rate of pay and that it paid overtime on those hours, allegedly cancelling out any negative effect on employee pay that would be caused by adding in the nonproductive time to the regular rate.

There exists a material issue of fact on the final requirement of a valid FWW as the parties disagree on how exactly the regular rate of pay, upon which overtime is calculated, was determined, and on the issue of when and how Defendant paid overtime on non-productive time.  Accordingly, summary judgment must be denied because the manner in which overtime was compensated, the core of this FLSA case, is unquestionably disputed.

**Rodrique Conclusion**

Viewing all evidence in a light most favorable to Plaintiffs, the Court finds that a material issue of fact remains as to whether Defendant paid Plaintiff Schaefer a 50% overtime bonus on overtime hours, as required by the controlling Department of Labor regulation: 29 C.F.R. § 778.114.  Accordingly, as explained above,

Defendant's Motion for Summary Judgment with regards to all claims in the Rodrique case, including the claims of the 2,607 opt-in Plaintiffs is **DENIED.**

### B.   Teblum Case

The above legal discussion of the Rodrique case applies to the named Plaintiffs in the Teblum case as well.  The Plaintiffs in the Teblum et al. v. Eckerd Corp. case are photo lab supervisors and photo lab managers, rather than first assistant managers as in the Rodrique case.  It is undisputed that, at all relevant times, Defendant paid its photo lab supervisors as non-exempt employees pursuant to the FWW.  Defendant has paid its photo lab managers pursuant to the FWW since June or July of 2001.

Plaintiffs raise the same arguments in the Teblum case as in the Rodrique case.  As stated above, the named Plaintiffs in the Teblum action are Lance Teblum, Bernadette Teblum, Joyce Brindle, Nancy Civitarese, and Edward Dimmerling.

### 1.   Lance Teblum

Lance Teblum became an Eckerd photo lab manager in 2001 and, at that time, was paid as an exempt salaried employee (not under FWW) at $532.00 per week.  (Teblum Doc. # 693-1 at 10-11).  In July 2001, Lance Teblum was transferred to Eckerd's FWW method of compensation (Id. at 11).  Thereafter, in April 2002, Lance Teblum was eligible for, and did receive, a Lab Manager Bonus for the

bonus period of January 28, 2001 through January 26, 2002. Lance Teblum was also paid an additional amount for overtime on the bonuses. (<u>Id.</u>)[19]

## 2. Bernadette Teblum

Plaintiff Bernadette Teblum began her employment with Defendant as a photo lab supervisor in December 1999 (Teblum Doc. # 659-41 at pp. 35-36). She received a base weekly pay of $400.00 and a premium for overtime hours pursuant to the FWW. (<u>Id.</u> at pp. 40-46, 85). She was promoted to photo lab manager in April 2000. (<u>Id.</u> at pp. 36, 76, 86). In December 2000, she quit her job. She returned to Defendant's employ in February 2001 as a "group leader," a position which paid $8.00 per hour, did not work any overtime hours, and was not compensated under FWW. (<u>Id.</u> at 37-38, 90-93). She quit her job again in June 23, 2001.

### i. Statute of Limitations

Defendant argues that Bernadette Teblum's claim is barred by the FLSA's statute of limitations, which follows:

> [I]f the cause of action accrues on or after the date of the enactment of this Act [enacted May 14, 1947]--may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three

---

[19] The Lab Manager Bonus was coded in his payroll records as 735 EP Mgr Bonus (COP) for $202.15 and 725 EP Mgr. Bonus (Sales) for $990.00 (Teblum Doc. # 693-1 at 11).

years after the cause of action accrued.

(29 § U.S.C. 255(a))

As stated, Plaintiffs in the Teblum action filed their complaint in state court on July 15, 2003, and Defendant removed the action on August 27, 2003. Because Plaintiff Bernadette Teblum quit Defendant's employ in June 2001, Defendants suggest that the two-year statute of limitations provided in 29 U.S.C. § 255(a) has run on her claim, barring her action against Defendant. However, a three-year statute of limitations applies in actions for willful violations. In this case, Plaintiffs assert that Defendant willfully violated the terms of the FLSA. The determination of whether Defendant violated the FLSA cannot be made at this juncture. Accordingly, it would be inappropriate to preclude Bernadette Teblum's claim, as she was employed as a Photo Lab Supervisor and a Photo Lab Manager and paid pursuant to Eckerd's alleged unlawful FWW method of compensation through May of 2000, which does precede the three-year period prior to the time her suit was filed. (Teblum Doc. # 678 at 2).

### 3. **Joyce Brindle**

Plaintiff Brindle was first employed by Defendant in August 1999 as an hourly worker, she then became a photo lab supervisor and eventually, a photo lab manager. She signed two FWW Agreements (FWWA's). Her weekly salary was between $375.71 in 2000 as a photo

32

lab supervisor and $570.12 as a photo lab manager when she left Eckerd's employ in 2003. She received a Lab Manager Bonus in April 2002 for the bonus period beginning January 28, 2001 and ending January 26, 2002.[20] Plaintiff Brindle was paid an additional amount for overtime on the bonus.

### 4. Nancy Civitarese

Plaintiff Civitarese began her employment with Defendant in 2000 as a photo lab supervisor and left Defendant's employ in July 2000. She was paid pursuant to Defendant's FWW plan for the entirety of her employment.

As noted, Plaintiff Civitarese's employment ended on July 20, 2000. Similar to Plaintiff Bernadette Teblum's claims, Defendant argues that Plaintiff Civitarese's claims are time barred due to the two-year statute of limitations for FLSA claims. However, as ruled above, this Court has not determined whether it is appropriate to apply the two year or three year statute of limitations in this case, and to dismiss Plaintiff Civitarese's claims at this time would be premature.

### 5. Edward Dimmerling

Edward Dimmerling began his employment as a photo lab manager with Eckerd in September 2001. He worked in Pittsburgh,

---

[20] The Lab Manager Bonus was coded in her payroll records as 735 EP Mgr Bonus (COP) for $ 1,549.48 (Teblum Doc. # 693-1 at 12).

Pennsylvania.  He was paid $400.00 per week.  (Teblum Doc. # 659-20 at pp. 26-29).[21]

**FWW Analysis**

    a.  **Fluctuating Hours**

Plaintiffs' pay records have been filed with the Court as exhibits to James Sidman's declaration.  The record supports that each of the named Plaintiffs worked hours which fluctuated from week to week.  Notably, Plaintiffs never asserted that their hours did not fluctuate.  Instead, Plaintiffs argue that Defendant should not be entitled to utilize the FWW method of payment because Plaintiffs worked at least fifty hours a week, and Defendant did not inform Plaintiffs of the number of hours Plaintiffs were asked to work each week.  As discussed in the Court's analysis of the Rodrique case, this Court does not see eye to eye with Plaintiffs on these issues.  The evidence shows that the three remaining named Plaintiffs' hours fluctuated from week to week.  Accordingly, the first requirement of a valid FWW, fluctuating hours, is met as to each of the remaining named Plaintiffs, and no material issue of fact remains to be decided.

---

[21] Plaintiff Dimmerling complained at his deposition that he was not paid the weekly base rate that he signed up for and agreed to: $550.00.  He states that the base pay he received was, instead, $400.00.  It should be noted that this suit does not concern this discrepancy. (Teblum Doc. # 659-20 at pp. 19-29).

### b.   **Fixed Weekly Salary**

It is not materially disputed that Plaintiffs were each paid a fixed weekly salary.

### c.   **Minimum Wage**

It is not disputed that the fixed weekly salaries pay to each named Plaintiff did not fall below the statutory minimum wage of $5.15 per hour.

### d.   **Mutual Understanding**

Despite Plaintiffs' arguments that they did not fully understand the FWW method of compensation, this Court finds that each of the named Plaintiffs did have an adequate mutual understanding with Defendant that they would be paid a fixed weekly salary regardless of the number of hours worked and would receive a 50% overtime bonus for hours worked in excess of forty (40) per week.

The record contains several FWW agreements signed by the Teblum Plaintiffs.[22]  The agreements signed by Lance Teblum, Edward Dimmerling, and Joyce Brindle, for instance, stated as follows:

> As a member of the Eckerd Corporation Management team, the number of hours that you will be required to work will fluctuate from week to week.  You will receive a weekly base salary representing straight time pay for <u>all</u> hours worked (whether greater or fewer than 40 hours)

---

[22] The agreements are filed at (Teblum Doc. # 659-9).  No agreement for Plaintiff Civitarese was filed.

35

during the week.   In compliance with the Fair Labor
Standards Act, you will also receive additional pay for
all hours worked over 40 during the workweek.   All time
worked must be recorded on a time sheet and reported for
payroll purposes.

In addition to the FWW agreements signed by the majority of

the Plaintiffs, the record contains deposition testimony from each

Plaintiff, excluding Civitarese, indicating that each Plaintiff

understood the manner in which they would be compensated under the

FWW.[23]

During Plaintiff Lance Teblum's January 26, 2005 deposition,

he stated that he did not agree with the FWW formula, but that he

did understand it.[24]

Plaintiff Bernadette Teblum was deposed on January 26, 2005.

(Teblum Doc. # 659-41).   She testified that, "we were required to

---

[23] Plaintiff Civitarese was deposed on March 7, 2005.   She
indicated that her memory is not good, and she reported having
multiple heart attacks and surgery which severely impaired her
memory.   (Teblum Doc. # 659-50 at 7-10).

[24] Specifically, when Lance Teblum was asked, "You understand
this formula?" Plaintiff responded, "Oh, yes, I do." (Teblum Doc.
# 559-37 at pp. 43-44).   It would be remiss to fail to mention that
Lance Teblum's deposition testimony is somewhat troubling.   He
complains that he was not paid for some of the hours that he worked
because the time clock did not function after hours, that he was
forced to sign the FWW agreement "under duress," and that he was on
mind-altering medications during his deposition because he is not
well, has cancer, and cannot remember clearly.   (Id. at pp. 41-44).
Despite some of Plaintiff's alarming statements and Plaintiff's
general tone of dissatisfaction with Defendant as an employer,
Plaintiff's deposition testimony reflects that he possessed the
basic understanding required by the FWW.

work 50 hours a week.  My salary was $400 for 40 hours, $440 for 50 hours is the basic, the way it was set. . . . I would get $40 for working an additional ten hours." (<u>Id.</u> at 38-39).  She agreed that the extra $40 was compensation for overtime and that it was in addition to her base pay. (<u>Id.</u>)

Plaintiff Brindle testified as follows concerning her understanding of the FWW: when asked, "So you've always been working under the fluctuating workweek formula?"  She answered, "Basically."  Further, when asked, "And you understood that you worked under that formula?"  She responded, "I didn't have a choice."  Finally when asked, "but you knew that was the formula under which you were being compensated?"  Plaintiff Brindle answered, "Yes." (Teblum Doc. # 659-45 at 12-13).  She also acknowledged that she received a "half-time" premium on overtime hours under the FWW. (<u>Id.</u>)

Similarly, Plaintiff Dimmerling testified on March 4, 2005 that he understood the FWW.  Specifically, he was asked, "Did you understand that [the FWW]?"  Plaintiff responded, "I understood the mathematics of it, yes." (Teblum Doc. # 659-20 at p. 34).  Plaintiff Dimmerling stated that he did not understand every aspect of the FWW, or why the FWW was implemented, but he did state in response to whether he understood the mathematics of it, "Sure.  That was based on everything over 40 hours a week.  If I worked overtime, they were going to pay me at half my rate." (<u>Id.</u> at p.

37

37).

It should be noted that Plaintiffs are not required to understand the exact mathematical equations Defendant utilized to determine Plaintiffs' pay, including the specific formulas used with regard to vacation pay, holiday pay, and bonuses.  In addition, the Plaintiffs are not required to grasp the policy behind Defendant's choice to implement an FWW plan.  As previously noted, Plaintiffs must only understand that their employer will pay them a fixed salary regardless of the number of hours worked and that they will be paid a premium for overtime hours.  The named Plaintiffs' deposition testimony, their signatures on FWW agreements reflecting this basic understanding, and the fact that Plaintiffs' pay stubs reflected the FWW method all demonstrate that Plaintiffs possessed the requisite understanding of the FWW described in 29 C.F.R. § 778.114.

There is no material issue of fact left to be determined on this issue.

**e.**   **50% Overtime Premium**

Defendant asserts that Plaintiffs were paid an overtime premium of 50% for all hours worked over 40 per week.  Plaintiffs generally do not contest that Defendant provided overtime premiums.  However, as in the Rodrique case, Plaintiffs assert that Defendant failed to pay a 50% overtime premium on "hours worked" by adding

38

nonproductive time into the equation which computed overtime figures.   This Court's determination that there is a material factual dispute on this issue in the Rodrique case holds true in the Teblum case as well.   A material issue of fact exists as to Defendant's computation of its overtime premium for hours worked.

### i.   Bonuses

In addition, Plaintiffs assert that the manner in which Defendant provided bonuses to Plaintiffs resulted in Plaintiffs being deprived of overtime pay.   Eckerd provided its competent Photo Lab Managers with a bonus, the "Express Photo Lab Manager Bonus" depending on the size and location of the store.    In addition, Eckerd provided a "Shrink Gain Bonus" to employees who worked in stores in which shrink, that is, theft and loss, was adequately controlled. (Teblum Doc. # 678 at 12-13).

Lance Teblum, Edward Dimmerling and Joyce Brindle received the photo lab manager bonus, and Dimmerling received a Shrink Gain Share bonus.   According to Plaintiffs, the Photo Lab Manager bonus was distributed to qualifying employees on a yearly basis.   The bonus period ended in January of the calendar year and the bonus was paid in April.   Similarly, the Shrink Gain Share bonus was based on the twenty-six weeks prior to each store's inventory; which were conducted on a rolling basis. (Id. at 13).

Plaintiffs argue that the manner in which Defendant computed

overtime on bonuses resulted in a violation of 29 C.F.R. § 778.209,

which states:

> (a) Where a bonus payment is considered a part of the regular rate at which an employee is employed, it **must be included in computing his regular hourly rate of pay and overtime compensation**. No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period. The amount of the bonus is merely added to the other earnings of the employee (except statutory exclusions) and the total divided by total hours worked. Under many bonus plans, however, calculations of the bonus may necessarily be deferred over a period of time longer than a workweek. In such a case the employer may disregard the bonus in computing the regular hourly rate until such time as the amount of the bonus can be ascertained. Until that is done he may pay compensation for overtime at one and one-half times the hourly rate paid by the employee, exclusive of the bonus. When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week.

> (b) Allocation of bonus where bonus earnings cannot be identified with particular workweeks. If it is impossible to allocate the bonus among the workweeks of the period in proportion to the amount of the bonus actually earned each week, some other reasonable and equitable method of allocation must be adopted. For example, it may be reasonable and equitable to assume that the employee earned an equal amount of bonus each week of the period to which the bonus relates, and if the facts support this assumption additional compensation for each overtime week of the period may be computed and paid in an amount equal to one-half of the average hourly increase in pay resulting from bonus allocated to the week, multiplied by the number of statutory overtime hours worked in that week. Or, if there are facts which make it inappropriate to assume equal bonus earnings for each workweek, it may be reasonable and equitable to assume that the employee

40

earned an equal amount of bonus each hour of the pay
period and the resultant hourly increase may be
determined by dividing the total bonus by the number of
hours worked by the employee during the period for which
it is paid. The additional compensation due for the
overtime workweeks in the period may then be computed by
multiplying the total number of statutory overtime hours
worked in each such workweek during the period by one-
half this hourly increase.

(Emphasis added).

Plaintiffs claim that Defendant, in violation of its
obligation to pay the bonus on total hours worked, distributed the
bonus amount across the number of total hours paid during the bonus
period, including nonproductive hours such as sick time, vacation
time, personal time, and holiday time.  Plaintiffs state that the
equation used by Defendant to calculate the overtime due on
bonuses, which follows, violated the above regulation:

Formula:  Bonus  Amount/(productive  hours  paid  +
nonproductive hours paid) = Bonus Regular Pay Rate
Bonus Regular Pay Rate x Productive Hours Over 40 in a
Week x ½ = Overtime Premium Due.

(Teblum Doc. # 697 at 33).

Plaintiffs argue, "Defendant intentionally, systematically,
and methodically reduced the dollar amount of the Bonus Hourly Rate
and thus reduced the amount of additional overtime compensation
paid." (Teblum Doc. # 697 at 33).

Defendant rests on its analysis of its use of nonproductive
time. (Teblum Doc. # 702 at 17).

Plaintiffs' arguments concerning bonuses are inextricably

41

bound with Plaintiffs' arguments concerning nonproductive time.[25]

In addition, 29 C.F.R. § 778.208 provides some discussion of bonuses, and states:

> Section 7(e) of the Act requires the inclusion in the regular rate of all remuneration for employment except seven specified types of payments. Among these excludable payments are discretionary bonuses, gifts and payments in the nature of gifts on special occasions, contributions by the employer to certain welfare plans and payments made by the employer pursuant to certain profit-sharing, thrift and savings plans. These are discussed in §§ 778.211 through 778.214. Bonuses which do not qualify for exclusion from the regular rate as one of these types must be totaled in with other earnings to determine the regular rate on which overtime pay must be based. Bonus payments are payments made in addition to the regular earnings of an employee. For a discussion on the bonus form as an evasive bookkeeping device, see §§ 778.502 and 778.503.

Because the bonuses in question were contained in contracts

---

[25] Plaintiffs point to an example from Edward Dimmerling's pay records to illustrate the argument that overtime pay on bonuses was thrown off because nonproductive time was added to the hours. Dimmerling received a Shrink Gain bonus of $600.00 for the bonus period beginning December 29, 2002 and ending on June 28, 2003. According to Plaintiffs, Mr. Dimmerling's total bonus amount was divided by the total number of hours paid during the period, 114.30 hours. Based on this calculation, his "Bonus Regular Rate" was $.52. This "Bonus Regular Rate" was then multiplied by the number of overtime hours worked by Mr. Dimmerling during the peroid (76.70), and then divided in half to determine that Mr. Dimmerling was due an additional overtime amount of $19.94. However, 64 of the 1144.30 total hours paid were for nonproductive time and should not have been included according to the plain language of the regulation. Notably, if these hours were removed from the calculation, Mr. Dimmerling's "Bonus Regular Rate" would have been calculated as follows: $600.00 ÷ (1144.30 - 64 = 1080.3) = $.56. Using this increased "Bonus Regular Rate" of $.56 instead of $.52, Mr. Dimmerling would have been paid $21.47 instead of $19.94: $.56 x 76.70 = 42.95 x ½ = $21.47.   (Teblum Doc. # 679 at 35-37).

with the employees, the bonuses were nondiscretionary.[26] Neither party has asserted that such bonuses were discretionary.

According to Brenda Homley, Eckerd's Corporate Representative, the Shrink Gain and Photo Lab bonuses are computed in the same manner, using a computer program entitled "peoplesoft." (Rodrique Doc. # 234-2 App. A.11 pp. 85-95).

Brenda Homley did provide some additional discussion of how the bonus and overtime calculations intertwined:

> Basically it [Eckerd's software] looks at the amount of hours the person worked during the bonus period. It looks at the number of hours that the participant worked during the bonus period. You take the bonus earned divided by that number of total hours, you take that and you divide that by two and multiply that times the number of overtime hours or I guess you could take times the number of overtime hours and divide it by two and then that gives you the fluctuating workweek additional overtime payment.

(Rodrique Doc. # 234-2 App. A.11 at 89).[27]

Ms. Homley's deposition testimony is vague and contradictory at times. Her statements do not clear the way for Defendant to prevail on this issue. This Court finds that there is a material factual dispute on the calculation of overtime on bonuses, as such

---

[26] Bonuses contained in contracts with the employees are nondiscretionary. See, O'Brien, 350 F.3d at 295 (correctly noting that, pursuant to 29 C.F.R. § 778.211, any bonus paid pursuant to a contract must be included in the regular rate).

[27] This Court does not fully credit Mr. Homley's testimony because, in discussions related to the bonuses, she did not know some basic information concerning the manner in which such bonuses related to overtime: the present issue.

overtime pay was affected by the manner in which Defendant used nonproductive time.

Accordingly, summary judgment must be denied on this issue as well.

### Teblum Conclusion

As in the Rodrique case, a genuine issue of material fact on the issue of 50% premium for hours worked over 40 exists.  In Teblum, because bonuses were paid, Defendant's use of nonproductive time presents another layer of disputed material facts.

The Court finds, as it did in the Rodrique case, that the other elements of a valid FWW are met: hours which fluctuate from week to week, fixed weekly salary, no minimum wage violations, and a clear and mutual understanding between employer and employee.

Thus, similar to the Rodrique case, the Court **DENIES** Defendant's motion for summary judgment as to the named Plaintiffs and thus, the 2,089 opt-in Plaintiffs.

Accordingly, it is now

**ORDERED, ADJUDGED, and DECREED:**

1.   Defendant Eckerd Corporation's Motion for Final Summary Judgment (Teblum Doc. # 656) is **DENIED.**

2.   Defendant Eckerd Corporation's Motion for Final Summary Judgment (Rodrique Doc. # 189) is **DENIED.**

3.   Defendants Eckerd Corporation's Motion to Strike Affidavits (Teblum Doc. # 687) is **GRANTED.**

4.  Defendants Eckerd Corporation's Motion to Strike Affidavit (Rodrique Doc. # 240) is **GRANTED.**

5.  The clerk is directed to file this Order in the case of Rodrique v. Eckerd Corporation 2-03-cv-519-FtM33-SPC, and to Close the Rodrique case.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida, this <u>7th</u> day of February, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record